

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

September 19, 2025

**BY ECF**
The Honorable Victor Marrero
Senior United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

Re:    *United States v. David Matos*, 25 Cr. 197 (VM)

Dear Judge Marrero:

The Government respectfully submits this letter in advance of the September 26, 2025 sentencing for defendant David Matos and in response to the defense sentencing submission. The Government respectfully submits that a below-Guidelines sentence of 65 months' imprisonment adequately punishes the seriousness of the defendant's conduct and promotes respect for the law while accounting for the defendant's role and acceptance of responsibility.

## I.    Offense Conduct

On March 15, 2024, the defendant and his co-defendant ("CC-1") were expecting an important package to arrive at their apartment in the Bronx. They knew that the package contained a shipment of narcotics from California, and that just three days before—on March 12, 2024—the package delivery company left a slip at the apartment indicating that the package was not delivered. (Presentence Investigation Report ("PSR") ¶ 13).

What the defendant and CC-1 did not know was that a few days prior, on March 8, 2024, the package had been intercepted by an HSI narcotics interdiction task force, and that after obtaining a warrant to search the package, law enforcement discovered that it contained approximately 827 grams of methamphetamine. (PSR ¶ 11). What the defendant and CC-1 also did not know is that the courier who attempted to deliver the package to the apartment on March 12, 2024 was an undercover law enforcement officer. (PSR ¶¶ 12-13). On March 15, 2024, the undercover law enforcement officer communicated with the defendant and CC-1 to coordinate the delivery of the package. (PSR ¶¶ 14-15). The defendant confirmed that he was the recipient of the package, informed the undercover law enforcement officer that he missed the delivery of the package and needed the package, and offered to pick the package up in person. (PSR ¶ 14).

Law enforcement officers conducted another controlled delivery of the package on March 15, 2024. (PSR ¶ 16). After the defendant opened the door and confirmed that he was the intended recipient of the package, law enforcement officers arrested the defendant and CC-1, who also

confirmed that he was the intended recipient of the package.  (PSR ¶ 16).  The law enforcement officers also observed suspected narcotics, narcotics residue, narcotics paraphernalia (including scales), and U.S. currency in plain view, which they subsequently seized pursuant to a warrant.  (PSR ¶¶ 17-19).  Among other things, law enforcement officers ultimately seized approximately 70 grams of methamphetamine, plastic bags with powder residue, and three scales containing narcotics residue.  (PSR ¶¶ 17-19).

## II.    Procedural History

On March 16, 2024, the defendant and CC-1 were charged in a two-count Complaint with conspiring to distribute 500 grams and more of mixtures and substances containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 846; and possessing with the intent to distribute 500 grams and more of mixtures and substances containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(A).  On or about May 5, 2025, the defendant waived indictment, consented to the filing of an Information charging him with conspiring to distribute 500 grams and more of mixtures and substances containing a detectable amount of methamphetamine, and pleaded guilty pursuant to a plea agreement to the lesser-included offense of conspiring to distribute 50 grams and more of mixtures and substances containing a detectable amount of methamphetamine.  (PSR ¶¶ 1-4).

In the plea agreement, the parties stipulated to a total offense level of 28 based on the following calculations: (i) a base offense level of 31 pursuant to U.S.S.G. §§ 2D1.1(a)(5) and 2D1.1(c)(3) because the offense involved more than 500 grams but less than 1.5 kilograms of actual methamphetamine, with a 3-level mitigating-role adjustment pursuant to U.S.S.G. § 2D1.1(a)(5)(B)(ii); (ii) a 2-level increase pursuant to U.S.S.G. § 2D1.1(b)(5) because the offense involved the importation of methamphetamine; (iii) a 2-level decrease pursuant to U.S.S.G. § 3B1.2(b) because the defendant was a minor participant in the criminal conduct; and (iv) a 3-level decrease for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and (b).  The plea agreement also calculated a Criminal History Category of III based on the defendant's criminal history score of four.  These calculations resulted in a Stipulated Guidelines Range of 97 to 121 months' imprisonment.  (*See* PSR ¶ 101).

The Probation Office calculated a lower offense level of 26 (PSR ¶¶ 26-37), the same Criminal History Category of III (PSR ¶¶ 38-42), and a resulting Guidelines range of 78 to 97 months' imprisonment (PSR ¶¶ 100-01).  The Probation Office recommends a sentence of 60 months' imprisonment.  (PSR, at 25).

## III.    Discussion

### A.    Applicable Law

Although *United States v. Booker* held that the Guidelines are no longer mandatory, it also held that they remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing.  543 U.S. 220, 264 (2005).  A "district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range"— that range "should be the starting point and the initial benchmark."  *Gall v. United States*, 552

U.S. 38, 49 (2007).

After making the initial Guidelines calculation, a sentencing judge must then consider the factors outlined in Title 18, United States Code, Section 3553(a), which provides that a sentencing "court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection," and sets forth seven specific considerations:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established [in the Guidelines];

(5) any pertinent policy statement [issued by the Sentencing Commission];

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

While a district court may not presume that an appropriate sentence lies within the Guidelines range, "the fact that § 3553(a) explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall*, 552 U.S. at 50 n.6. To the extent a district court varies from a Guidelines sentence, "[it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Id.* at 50. The Second Circuit has recognized that "[i]n the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances." *United States v. Fernandez*, 443 F.3d 19, 27 (2d Cir. 2006); *see also Kimbrough v. United States*, 552 U.S. 85, 108-09 (2007) ("We have

accordingly recognized that, in the ordinary case, the Commission's recommendation of a sentencing range will reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." (quotations omitted)).

### B. A Below-Guidelines Sentence of 65 Months' Imprisonment Is Appropriate

The Government respectfully submits that a below-Guidelines sentence of 65 months is sufficient, but not greater than necessary, in view of the statutory sentencing factors set forth in 18 U.S.C. § 3553(a). Despite the severity of the offense, meaningful mitigating factors counsel in favor of downward variance, including the defendant's lesser role in this crime compared to his co-defendant, as well as his acceptance of responsibility.

The distribution of methamphetamine is undoubtedly a serious offense. Methamphetamine is a highly addictive drug that can lead to violent behavior and psychotic features, such as paranoia, aggression, hallucinations, and delusions. *See* Drug Enforcement Administration, "Drug Fact Sheet: Methamphetamine," *available at* https://www.dea.gov/sites/default/files/2025-01/Methamphetamine-Drug-Fact-Sheet.pdf (last visited Jan. 31, 2025). The defendant and CC-1 possessed at least approximately 842.1 grams of 98.2% pure methamphetamine—easily distribution quantities of methamphetamine. Moreover, by the defendant's own admission, he has previously delivered methamphetamine at CC-1's direction to other locations. (PSR ¶ 21).

That said, there are meaningful mitigating factors that warrant a below-Guidelines sentence. To start, the defendant played a lesser role in the offense compared to CC-1, who directed the defendant to receive, prepare, and deliver narcotics on CC-1's behalf. (PSR ¶¶ 21-22, 25-26). Indeed, while it does not excuse the defendant's conduct, it appears as if the defendant participated in the narcotics conspiracy in exchange for free housing and methamphetamine from CC-1. (PSR ¶¶ 25-26). Moreover, the defendant's acceptance of responsibility—which included truthfully admitting to his prior narcotics-related conduct (of which the Government was not previously aware) in an interview with the Government—is meaningful and also justifies a below-Guidelines sentence in this case.[1]

---

[1] The defendant participated in a safety-valve proffer with the Government in December 2024, when both parties were under the erroneous belief that the defendant was eligible for relief under 18 U.S.C. § 3553(f).

## IV.    Conclusion

For the reasons set forth above, this Court should impose a below-Guidelines sentence of 65 months' imprisonment.

Respectfully submitted,

JAY CLAYTON
United States Attorney

By: _____
Jerry J. Fang
Assistant United States Attorney
(212) 637-2584

Cc: Patrick Joyce, Esq. (by ECF)